UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:23-cv-02787-VMC-AAS

Xianfeng Wang,

    Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A"

    Defendant.
_____/

**Defendants' Response In Opposition To
Plaintiff's Motion For Entry of a Preliminary Injunction**

Defendants, CVNC USA (seller ID A2MA26Z71UKQ3K) and SOLSHINE (seller ID AXQD4J7R9JR69) (collectively, "Defendants"), by and through undersigned counsel, hereby responds in opposition to Plaintiff's Motion for Entry of Preliminary Injunction ("Motion for Preliminary Injunction") [D.E. 35, 36], and in support thereof argues as follows:

**I.    Procedural Background**

On December 6, 2023, Plaintiff, Xiangfeng Wang ("Plaintiff"), filed a Complaint alleging patent infringement against, *inter alia*, Defendants, relating to Plaintiff's U.S. Patent No. D907,360 ("Plaintiff's Patent") [D.E. 1]. On December 14, 2023, Plaintiff filed an *Ex Parte* Motion for Entry of a Temporary Restraining Order, Including a Temporary Injunction, A Temporary Asset Restraint, Expedited Discovery and Service of Process by Electronic Mail, and/or Publication (the "Motion for TRO") [D.E. 18, 19].[1] On December 15, 2023, the Court entered an Order granting Plaintiff's Motion for TRO **without notice or adversarial presentation** (the "Order") [D.E. 21].

---

[1] The Motion for TRO was Plaintiff's Second Motion for such relief; Plaintiff's first motion [D.E. 15, 16] was stricken by the Court.

Per the Order, the injunctive relief described therein was to remain in effect for 14 days from the entry thereof, with any motion seeking an extension of such relief required to be filed on or before December 28, 2023. On December 27, 2023, Plaintiff filed a Motion for Extension of Time to File Preliminary Injunction ("Motion To Extend TRO"). [D.E. 27]. On December 28, 2023, the Court granted Plaintiff's Motion To Extend TRO, pursuant to which the injunctive relief provided in the Order was extended to January 11, 2024 at 5:12 PM. [D.E. 29]. Notwithstanding the expiry of the TRO and Defendants numerous written requests,[2] Plaintiff has failed and/or outright refused to inform third parties that the TRO has expired.[3] As such, Defendants currently remain subject to a wrongful and impermissible freeze of its assets, and has and continues to suffer substantial and material harm as a result.

Furthermore, for the reasons explained in further detail below, Plaintiff is entitled no further relief under Plaintiff's Motion for Preliminary Injunction, as Plaintiff is unlikely to succeed on the merits of its claims raised in Plaintiff's Complaint. As a result, any request for preliminary injunction and/or asset restraint must be denied.

II.  **Argument**

   a. **Legal Standard**

An injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly established the burden of persuasion as to the prerequisites.  Siegel v. LePore, 234 F.3d

---

[2] On January 17, 2024, Defendants' counsel emailed Plaintiff's counsel, requesting that Plaintiff's counsel inform Amazon of the expiry of the TRO. Plaintiff's counsel refused, stating that the Court had yet to rule on Plaintiff's Motion for Preliminary Injunction, notwithstanding such fact was immaterial due to the expiration of the TRO and applicable case law and federal rules of civil procedure. Defendants' counsel tried on repeated occasion to obtain Plaintiff's compliance with the federal rules of civil procedure. Plaintiff's counsel refused on each occasion.

[3] *See, e.g.,* [D.E. 42, 43] (motion for miscellaneous relief filed on January 26, 2024 by movant, eBay, Inc., seeking relief from TRO more than 2 weeks after the expiry thereof); [D.E. 44] (Court Order denying movant, eBay, Inc.'s motion for miscellaneous relief as moot due to expiry of TRO and directing Plaintiff to provide notice of the expiry of the TRO to all third-party entities who were responsible for implementing the asset freeze provided for in the TRO).

1163, 1176 (11th Cir.2000). To obtain injunctive relief, a movant must satisfy four requirements: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant," and (4) "that the preliminary injunction would not be averse to the public interest." Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014).

Generally, the first element is the most important because granting a temporary restraining order or motion for preliminary injunction would be inequitable if the movant has no chance of success on the merits. Martinetti v. Tucker, 2012 WL 13071123 at *1 (S.D. Fla. May 8, 2012); *see also* Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.Cir.2001) (stating a moving party is not entitled to a preliminary injunction unless it establishes both the likelihood of success on the merits and irreparable harm absent a preliminary injunction).

      **b. Plaintiff's Motion for Preliminary Injunction should not be granted because Plaintiff is highly unlikely to succeed on the merits, as Plaintiff's Patent is likely to be declared invalid.**

In the patent context, a "reasonable likelihood of success" requires a showing of (1) validity, and (2) infringement. *See* Ranbaxy Pharm., Inc. v. Apotex, Inc., 350 F.3d 1235, 1239 (Fed.Cir.2003) (stating to establish likelihood of success on the merits, the moving party must show that in – light of the presumptions and burden that will inhere at trial on the merits – (i) it will likely prove infringement, and (ii) its infringement claim will likely withstand challenges to the validity and enforceability of its patent); *see also* Mylan Institutional LLC v. Aurobindo Pharma Ltd., 857 F.3d 858 (Fed. Cir. 2017) (stating to establish a substantial likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims *and* that its infringement claim will likely withstand the alleged infringer's challenges to patent

validity and enforceability) (emphasis added).

Though an issued patent is presumed valid, this presumption "does not relieve a patentee who moves for preliminary injunction from carrying the normal burden of demonstrating [likelihood of success,] even when the issue concerns the patent's validity." Helifix, Ltd. v. Blok–Lok, Ltd., 208 F.3d 1339, 1351 (Fed.Cir.2000). If the alleged infringer raises a "substantial question" concerning validity, enforceability, or infringement, the Court is precluded from issuing a preliminary injunction. Id. In order to raise a "substantial question" on validity for injunctive purposes, the alleged infringer is not required to demonstrate to a legal certainty that it would ultimately win at trial. In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. 2d 1279, 1304 (S.D. Fla. 2005). "Validity questions during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial….Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." Amazon.com, Inc., 239 F.3d at 1358–59; *see also* Fusilamp, LLC v. Littelfuse, Inc., 2010 WL 3446913, at *3 (S.D. Fla. August 31, 2010) (stating an alleged infringer must only establish the existence of a substantial question as to the invalidity of the patent to meet its burden in defending against a motion for preliminary injunctive relief, and this burden is merely to show "vulnerability" of the patent at the preliminary injunction stage – not to establish the patent's "invalidity."); *see also* TAS Energy, Inc. v. Stellar Energy Americas, Inc., 2015 WL 6156149 (M.D. Fla. Oct. 19, 2015) (stating to meet its burden of raising a substantial question concerning validity, the alleged infringer must only show that the patent is "vulnerable," which requires less proof than the clear and convincing showing necessary to establish invalidity itself.).

Once the alleged infringer establishes the existence of a substantial question as to the

validity of the patent, the burden shifts to the patentee to show that it will likely succeed at trial. Id. In doing so, the patentee must show that the alleged infringer's defense lacks substantial merit. New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed.Cir.1992). *See also* Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1364 (Fed.Cir.1997) ("In other words, if [the alleged infringer] raises a 'substantial question' concerning validity, enforceability, or infringement (i.e., asserts a defense that [the patentee] cannot show 'lacks substantial merit') the preliminary injunction should not issue.").

Under 35 U.S.C. § 102(b), a patent is invalid if the invention it claims was offered for sale or sold in the United States more than one year prior to the filing date of the patent application. *See* In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. at 1304; *see also* Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir. 2000) (affirming invalidity of a patent because the accused product was placed for sale prior to the critical date of the patent). The "on-sale bar" does not require sustained commercial activity, advertising, or displays; rather, a single sale or a single offer to sell is sufficient to trigger the statutory bar. *See* In re Caveney, 761 F.2d 671, 676 (Fed.Cir.1985). Furthermore, the sale or offer of sale does not need to be made by the inventor or by the patent owner. Id. A sale or offer for sale by a third party is just as effective a statutory bar to validity as a sale or offer by the inventor. Id.; *see also* J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577 (Fed.Cir.1986) (stating the "bar is not limited to sales by the inventor or one under his control, but may result from the activities of a third party."); *see also* Mfg. Rsch. Corp. v. Graybar Elec. Co., 679 F.2d 1355, 1361-3 (11th Cir. 1982) (finding no infringement based upon application of statutory on-sale bare, because a third party had offered for sale a functional too that embodied the tool claimed in the patent fourteen months before the patent application was filed).

Here, Plaintiff's Patent was filed for on September 28, 2019. *See* [D.E. 1-2]. Therefore, the critical date for purpose of the "on-sale bar" is September 28, 2018. Defendants have provided Plaintiff with ample evidence detailing that the alleged infringing product has been sold in the United States since at least 2016. Specifically, prior to the filing of this response, Defendants' counsel provided Plaintiff's counsel with the Declaration of Jin Liv, attached hereto as **Exhibit A**. Jin Liv is the manager of the Amazon store for Defendants, and has access to the business records of the Defendants. *See* **Exhibit A.**, ¶ 2. Per the Declaration of Jin Liv, Defendants listed the product at issue in this litigation (the "Alleged Infringing Product") for sale as early as November 25, 2016. Id. at ¶ 3; *see also* **Exhibit B** (showing first date available of Alleged Infringing Product on Amazon prior to Plaintiff's Patent "critical date"); *see also* **Exhibit C** (showing first date available of Alleged Infringing Product on eBay prior to Plaintiff's Patent "critical date.").

Furthermore, Defendants have made numerous sales of the Alleged Infringing Product since as early as June 2017. Id. at ¶ 4. In addition to the sales referenced in the Declaration of Jin Liv, Defendants made repeated sales of the Alleged Infringing Product throughout 2018.[4] Defendant's sales raise a substantial question as to the validity of Plaintiff's Patent. *See e.g.* In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. at 1304 (stating the existence of at least three sales prior to the patentee's critical date resulted in the application of the "on-sale bar."); *see also* In re Caveney, 761 F.2d at 676 (stating evidence of a single sale is sufficient to trigger the "on sale" bar.").

Based on the existence of Defendants' sales predating the critical date of Plaintiff's Patent, a substantial question has been asserted regarding the validity of Plaintiff's Patent. Absent

---

[4] Defendants reserve the right to prevent evidence relating hereto at hearing on Plaintiff's Motion for Preliminary Injunction.

Plaintiff's presentation of some argument stating that Defendants' application of the "on-sale bar" lacks merit – which Plaintiff is unable to do based upon the clear and convincing evidence presented in support of this opposition – it is apparent that Plaintiff is unable to meet the exacting requirements needed to obtain the "extraordinary relief" of a preliminary injunction. Furthermore, as Plaintiff's Patent is likely to be declared invalid, it follows that Plaintiff is not likely to succeed on the merits of its claims raised in Plaintiff's Complaint. *See e.g.*, Pride Family Brands, Inc. v. Carl's Patio, Inc., 992 F. Supp. 2d 1214, 1223 (S.D. Fla. 2014) (granting summary judgment and declaring a patent invalid based on application of the on-sale bar).

Alternatively, Plaintiff is unlikely to succeed on the merits of its case due to lack of infringement of Plaintiff's Patent by the Alleged Infringing Product. Defendants' Alleged Infringing Products are as follows:





Plaintiff's Patent claims that is for "The ornamental design for a trapezoidal handbag." Design patent infringement is a question of fact, which a patentee must prove by preponderance of the evidence. *See* L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed.Cir.1993). In Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed.Cir.2008), the Federal Circuit held that "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." In furtherance thereof, the "patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1295 (Fed. Cir. 2010). This analysis requires the Court to conduct a comparison of noted ornamental features as it relates the overall effect on the designs. Id.; *see also* Egyptian Goddess, 543 F.3d at 681 ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design.").

Defendants' Alleged Infringing Products are substantially dissimilar from Plaintiff's Patent, in that Defendants' products include additional features, such as: (i) side pockets, (ii) handle bars on the bottom of the product or top of the product, and (iii) difference in shape.

An additional basis for questioning the validity of Plaintiff's Patent is the obvious nature of its design. Section 103(a) precludes a patent's issuance when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole

would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on the underlying factual inquiries including: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims, (3) the level of ordinary skill in the relevant art, and (4) any objective indicia of non–obviousness, such as commercial success, long felt need, and failure of others. Id.

Defendants' Alleged Infringing Products constitute prior art in relation to Plaintiff's Patent, in that it existed prior to the filing of Plaintiff's Patent. The obvious nature of Plaintiff's Patent is clear; Defendants' Alleged Infringing Products are provided for the purpose of carrying pyramid-shaped musical instruments. It is obvious that a pyramid-shaped musical instrument would require being carried in a triangular-shaped handbag. A "trapezoidal handbag" is similarly shaped to a pyramid, with the caveat of being flatter at the top of the bag. It is obvious that, for protectional purposes, that Plaintiff's Patent would seek to flatten the top of the bag to provide more surface-area protection; as such, there is no difference in Plaintiff's Patent that would render it sufficiently unique from Defendants' prior art for the purpose of obtaining patent protection.

Based on the foregoing, numerous "substantial questions" exists regarding the validity of Plaintiff's Patent; as a result, the Court is precluded from granting preliminary injunction.

    **c. Plaintiff is not entitled to an asset restraint. Alternatively, at a minimum, the asset restraint should be limited to the amount that may possibly be recovered as profits through an equitable accounting.**

For the reasons, Plaintiff's Motion for Preliminary Injunction – including, without limitation, all relief requested therein – must be denied. However, should the Court view otherwise, at the very minimum, this Court should limit the asset restraint to the amount that may possibly be recovered as profits through an equitable accounting. The Supreme Court has held that district

courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). Furthermore, "the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." Charter Sch. Cap., Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc., 2015 WL 11201180 at *3 n. 3 (S.D. Fla. June 2, 2015) (internal citations omitted). Prejudgment asset restraints, therefore "should not include…financial accounts which bear no nexus to the alleged improper activities." F.T.C. v. Washington Data Res., 2011 WL 3566612 at *4 (M.D. Fla. July 15, 2011), *report and recommendation adopted*, 2011 WL 3566208 (M.D. Fla. Aug. 12, 2011); U.S. Commodity Futures Trading Comm'n v. E-Metal Merchants, Inc., 2006 WL 8432005 (S.D. Fla. Jan. 9, 2006) ("any funds not reasonably related to the ultimate relief requested by Plaintiff should be released."); *see also*, Animale Grp. Inc. v. Sunny's Perfume Inc., 256 F. App'x 707, 708 (5th Cir. 2007), *quoting*, Deckert v. Independence Shares Corp., 311 U.S. 282, 289-91 (1940) (noting that Prejudgment asset restraints are limited to cases seeking equitable relief, where they are narrowly drawn "to sequester only those funds necessary to satisfy the potential judgment.").

Applying these principles, any prejudgment asset restraint should be limited to amounts that the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. 15 U.S.C. § 1117(a); Cengage Learning, Inc. v. Doe 1, 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018); Lions Gate Films Inc. v. Does, 2014 WL 3895240, at *7 (C.D. Cal. Aug. 8, 2014); Absolute Activist Value Master Fund Ltd. v. Devine, 2016 WL 1572388 at *5 (M.D. Fla. Apr. 19, 2016) ("The asset freeze, however, may not preserve any amount of assets in

excess of the equitable relief sought."); Chanel, Inc. v. 83bab.com, 2014 WL 11881008 (S.D. Fla. June 19, 2014), *report and recommendation adopted*, 2014 WL 11881007 (S.D. Fla. July 11, 2014) (refusing to extend asset freeze to Defendants accounts where there was an insufficient showing that the "accounts also contain illegal profits from the sale of the [counterfeit] goods."); *see also*, Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief.  For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more... In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."); Levi Strauss & Co., 51 F.3d at 987 (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); McCarthy on Trademarks and Unfair Competition § 30:40 (4th ed.)  (the purpose of freezing assets is to preserve "security for plaintiff's future recovery on an accounting of the counterfeiter's profits."); F.T.C. v. Bishop, 425 F. App'x 796, 798 (11th Cir. 2011) ("The district court abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant-Appellant's ill-gotten gains.").

   Based on the foregoing, there is no basis for restraining amounts unrelated to the actions alleged in Plaintiff's Complaint. At this time, Defendants have been unable to conduct a diligent search to ascertain what profit Defendants have obtained from its alleged infringing activities. In any event, case precedent mandates that no such restraint should be required. In exercising its

discretion to modify[5] an asset restraint due to being overbroad, the court in *Awareness Ave. Jewelry LLC* stated the following:

> **[It does not appear] the Court that an asset freeze is required to ensure the availability of permanent equitable relief against the moving Defendants. The amount of funds in their accounts, the minimal profits they have obtained from the alleged infringement, and the fact that they have appeared by counsel in this lawsuit to respond to the complaint, all suggest that they will have funds to pay a judgment for disgorgement of profits if one is ultimately entered.**

Here, Defendants have appeared for the purpose of defending against Plaintiff's claims (as shown by the arguments presented above). Furthermore, Defendants are able to provide written confirmation to the Court that the Defendants will have funds to pay a disgorgement of profits if one is ultimately entered. Accordingly, there is no need for the Court to impose any asset restraint against Defendants. Alternatively, should the Court deem restraint required, the amount of any asset restraint on the Defendants' accounts should be reduced to, at most, the profit from the Defendants' sales of allegedly-infringing products.

### I. Conclusion

For the reasons set forth above, Defendants request that the Court deny Plaintiff's Motion for Preliminary Injunction, and grant such further relief as the Court deems just and appropriate.

Dated:        February 1, 2024                                Respectfully submitted,

/s/Darren Heitner
HEITNER LEGAL, P.L.L.C.
215 Hendricks Isle
Fort Lauderdale, FL 33301
darren@heitnerlegal.com
Ph.    (954) 558-6999
*Attorney for Defendants*

---

[5] In *Awareness Ave. Jewelry LLC*, the Court exercised its discretion to modify the preliminary injunctive relief previously granted to the extent of eliminating the asset restraint. 2023 WL 3568387, at *2.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2024, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.

By: _____

DARREN A. HEITNER